FILED
2020 Jun-10  AM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **TRE'AJA BAILEY** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No.** |
| ) | |
| **UNITED STATES OF AMERICA;** ) | **JURY TRIAL DEMANDED** |
| **WARDEN PATRICIA BRADLEY,** ) | |
| **individually; and OFFICER COOPER,** ) | |
| **individually.** ) | |
| ) | |
| **Defendants.** | |

## COMPLAINT

### NATURE OF THE CASE

1.     This is a civil action in which Plaintiff, by and through her attorneys, brings claims based on the Eighth Amendment to the United States Constitution against Defendant Officer Cooper, pursuant to the legal standards set forth in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) and its progeny. Plaintiff also brings claims against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.

2.     Plaintiff, while an inmate in the custody of the Federal Bureau of Prisons ("BOP"), was caused to endure repeated episodes of sexual abuse, coerced sex, sexual assault, and sexual battery by Officer Cooper and sustained damages as a proximate result.

3.     Plaintiff brings this suit to recover for the actions and inactions of the BOP, who failed in their duty to protect Plaintiff from the known risk that Defendant Cooper posed to her and to all inmates confined at FCI Aliceville. Defendant Warden Bradley was aware that Officer Cooper posed a significant risk of sexual assault and sexual abuse to the inmate population at FCI Aliceville, including and especially Plaintiff and failed in her duty to protect Plaintiff from same.

4.      As a federal inmate, Plaintiff was committed to the Government's care, custody, and control - her options for escape and for resistance were limited. Inmates at FCI Aliceville rely on employees of the BOP, and especially the Warden, to protect them from sexual abuse by guards and staff.

5.      As a result of the harm sustained by her while she was an inmate at FCI Aliceville, Plaintiff suffered injuries to include: physical and emotional harm, the dignitary injury of being forced to endure sexual activity to which she did not consent, for which she had neither the legal nor volitional capacity to consent, and from which she had no lawful means of escape.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. 2671, et seq. and against the individual Defendants under the Eighth Amendment to the United States Constitution, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as some or all the events upon which this action is based occurred in the Northern District of Alabama.

8.      Plaintiff has exhausted her federal tort claim administrative remedies as she filed an Administrative Tort Claim (Form 95) in or near August of 2018 and again in December of 2019, with the Federal Bureau of Prisons' Southeast Regional Office. As the six-month time period for a response has passed without Plaintiff having received a response, her claim has effectively been denied and her administrative remedies have been exhausted.

## PARTIES

9.      Plaintiff, Tre'aja Bailey, is an American citizen who was in the custody of the BOP at FCI Aliceville at all times relevant to this Complaint.

10.     The United States of America is a sovereign entity named herein pursuant to the FTCA.

11.     Defendant the United States of America oversees the Federal Bureau of Prisons "Bureau" or "BOP", which is responsible for the custody and care of federal inmates.

12.     Defendant Patricia Bradley was, at all times relevant to this complaint, a BOP employee and, on information and belief, she is an Alabama resident. Defendant Bradley ("Warden Bradley" or "Bradley") was Warden of FCI Aliceville, in which capacity she had full administrative responsibility for the entire institution. As Warden, Defendant Bradley had overall responsibility for facility-wide adherence to policies concerning sexually abusive behavior by FCI Aliceville guards against inmates. As Warden, Bradley was responsible for compliance with BOP, FPC and PREA2-mandated standards. She was also responsible for supervising, training, and disciplining correctional officers. Warden Wilson is named in both his official and individual capacities.

13.     At all times relevant to this complaint, Defendant Cooper was employed by the BOP as at FCI Aliceville, in which capacity he served as corrections officer.

14.     All defendants above were, at all times relevant to this complaint, acting under color of United States law.

FACTS

15.     Plaintiff Bailey was placed at FCI Aliceville during the first quarter of 2017. At the time, Bailey was 19 years old.

16.     Almost immediately, Bailey was told about corrections officers ("CO") at FCI

3

Aliceville forcing inmates to have sex. It was common knowledge among the inmates and staff.

17.     In late August, 2017, Bailey was in her cell with the door closed because she was undressing. Bailey placed a small covering over the window on her cell door to indicate she was in a state of undress, as inmates typically would do for some form of privacy. As Bailey undressed, she could hear the sound of keys rattling so she knew a corrections officer ("CO") was approaching. Bailey was surprised and frightened when Defendant CO Cooper opened her cell door. At this time, Bailey was completely naked. Bailey immediately told Cooper to give her a minute because she was naked. However, Cooper remained. In fact, Cooper[1] closed the cell door behind him. Cooper approached Bailey and told her not to make a sound. Cooper then began fondling Bailey's breasts and buttocks. Bailey attempted to back away but Cooper strongly pulled her closer to him. Cooper then used his fingers to digitally penetrate Bailey. Cooper then removed a condom that he had in his pocket and placed it on his erect penis.

18.     The 19 year old Bailey continually said "no" to Cooper. Cooper's touching of Bailey in any form was unwanted. Bailey feared for her personal safety and retaliation if she screamed or fought Cooper off of her. Cooper inserted his penis into Bailey's vagina. Bailey pleaded with Cooper to stop. Cooper sexually assaulted Bailey.

19.     As soon as it had begun, it had ended. Cooper was in Bailey's cell for approximately 5 minutes. When he prepared to leave, he told Bailey that she needed to stay quiet and that he would make her time in prison easier.

20.     A couple of days later, Cooper told Bailey that when he comes to her cell and knocks,

---

[1] Cooper is a large man. Upon information and belief, Cooper is approximately 6 feet 1 inch in height and weighed approximately 240 pounds during the relevant time period. Bailey is 5 feet 7 inches and weighed approximately 140 pounds during the relevant time period.

4

she needed to exit her cell and walk to the unit staff storage closet. Cooper told Bailey he would take care of the rest. The following day, Cooper knocked on Bailey's cell door very early in the morning around 5am. He looked through the window and gestured with his head for Bailey to come on. Bailey then exited her cell and walked to the unit staff area where the bathroom is located. Near the bathroom was the storage closet. When Bailey entered the closet, she was sexually assaulted by Cooper again.

21.   During the first week of September, 2017, Bailey was told that SIS was investigating whether Cooper was having sex with her and other inmates. Cooper became aware that SIS was conducting the investigation and he told Bailey that she had better deny everything. Fearing for her safety, Bailey did as Cooper demanded. But Bailey also became aware that SIS was speaking with other women that Cooper was sexually assaulting at FCI Aliceville.

22.   Bailey heard nothing further of the investigation and shortly after it had ended, the unwanted visits and sexual encounters began again. Utilizing the unit staff storage closet and the unit staff bathroom, Cooper sexually assaulted Bailey approximately once every 4 to 6 weeks. The sex included oral and vaginal sex. Cooper would usually remove the condom to ejaculate on Bailey's body or in Bailey's mouth.

23.   To get to the unit staff bathroom and closet, Bailey would have to go through locked doors. However, Cooper always made sure the doors were unlocked for Bailey so she could easily go to the restricted area. Surveillance cameras were located throughout the facility, including the path Bailey was told to take by Cooper when he would sexually assault her.

24.   At the time of the assaults, the unit staff bathroom had a full-length mirror to the left when you enter. Next to the mirror is a sink. Next to the sink is a porcelain toilet. Across from the

toilet is a wooden dresser-like storage unit that had female toiletries inside of it.

25.     Due to the sexual assault, Bailey became aware of intimate details concerning Cooper. More specifically, Cooper was hairy and would usually wear large boxers.  Cooper's penis was approximately 6.5 inches when erect.  Cooper's penis had a dark body or shaft, but the head of his penis was pink.  Additionally, Cooper told Bailey about his wife and his son. He would also tell Bailey he was going to put money on her books.

26.     On or near June 9, 2018, Cooper knocked on Bailey's cell door and gestured with his head indicating the "usual" routine. Bailey went to the unit bathroom and was directed by Cooper to perform oral sex on him.  Cooper then directed Bailey to swallow his semen.

27.     In the days leading up to June 9th, Bailey was actively trying to think of ways to get Cooper to stop sexually assaulting her.  However, Cooper had repeatedly told Bailey that if she said anything, no one would believe her and he would be sure to make her pay for what she did.

28.     After Bailey was made to swallow Cooper's semen, she knew she had to do something.  Bailey began speaking with different inmates about what she could do to best protect herself and to get Cooper to stop assaulting her and other female inmates.

29.     On August 17, 2018, Bailey filed a *pro se* complaint in federal court under the FTCA while she was still incarcerated at FCI Aliceville.[2]  Bailey also submitted a complaint to the BOP Southeast regional office. Bailey described some of the sexual assaults she experienced at the hands of Cooper and asked the court for a temporary restraining order because she was in fear of retaliation.

30.     In mid-September, 2018, after Bailey filed her complaint in court, Cooper, who was unaware of the complaint, again made Bailey meet him in the unit staff storage closet.  This time,

---

[2] Civil Action No: 7:18-cv-1317.

Bailey, knowing that she had filed a complaint in court and hoping the court would appoint an attorney, knew that she would need some form of evidence of the assault. So, when Cooper directed Bailey to swallow his semen, Bailey did not swallow all of it. Instead, Bailey stored some of Cooper's semen in her jaw. When she returned to her cell, Bailey spat the semen in a pill bottle and used a cotton swab to wipe her gums. Bailey stored the bottle and swab in a safe place until her relase from FCI Aliceville about 3 weeks later in October, 2018.

31.    Cooper's serial sexual assault of Bailey continued for more than a year and ended only when Bailey was released from FCI Aliceville.

32.    During the time Bailey was being sexually assaulted by Cooper in 2017 and 2018, there were multiple other CO's at FCI Aliceville having sex with inmates. Warden Bradley was aware of the rampant sexual abuse occurring at FCI Aliceville as the investigations were numerous and serious in nature. However, proper policies and precautionary measures were not put in place to protect the inmates. As a result, inmates, like Bailey, were continually sexually assaulted over extended periods of time. Additionally, other corrections officers were on duty and witnessed Cooper visiting Bailey's cell or letting her go to the restricted areas. None of the officers intervened to protect Bailey despite the more than suspicious activity taking place over the course of a year.

## COUNT I
### Eighth Amendment: Sexual Abuse, Battery and Sexual Harassment
### (Officer Cooper)

33.    Bailey realleges and incorporates by reference the allegations of paragraphs 15-32 above.

34.    Bailey had – as do all inmates in the custody of the BOP have - a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and

unusual punishment while incarcerated.

35.     Sexual abuse by a guard is not a legitimate form of punishment, it is not an ancillary component of any prison sentence, and it serves no legitimate purpose.

36.     Cooper violated Bailey's rights by repeatedly assaulting her, using coercion to have sexual contact with her for his gratification, and sexually abusing her while she was incarcerated at FCI Aliceville from September, 2017 until September, 2018.

37.     Cooper, individually, failed in his duty to provide Bailey with constitutionally safe and secure conditions of confinement by subjecting her to sexual abuse and battery.

38.     As a direct and proximate result of Cooper's sexual abuse, Bailey was subjected to unnecessary and wanton pain, and emotional and physical injury, and she is entitled to redress for this serious dignitary injury and for this violation of her person.

39.     Cooper's sexual abuse of Bailey amounted to outrageous conduct and was inhumane in the extreme.

40.     All of Cooper's acts and omissions were taken while acting under color of law and in his position as Corrections Officer of FCI Aliceville.

COUNT II
Eighth Amendment: Failure to Intervene
(Warden Bradley)

41.     Bailey realleges and incorporates by reference the allegations of paragraphs 15-32 above.

42.     On information and belief, Warden Bardley knew or should have known that Officer Cooper was sexually harassing and assaulting Bailey and other inmates at Aliceville.

43.     Warden Bradley was deliberately indifferent and even complicit in the risk faced by

8

Bailey relative to Cooper by failing to take such steps as could be reasonably expected to address the danger that he posed.

44.     The inaction of Bradley and the other agents, who were responsible for the custody, care, safety, and correctional treatment of Bailey in the face of this known risk to her safety was a direct and proximate cause of the violation of Bailey's rights under the United States Constitution.

45.     The acts, omissions, policies, and practices of Warden Bradley constituted a knowing violation of Bailey's clearly established constitutional rights.

46.     The policies, practices, acts, and omissions of Warden Bradley directly and proximately caused the violation of Bailey's Eighth Amendment right to be free from sexual abuse and sexual battery while incarcerated.

47.     Warden Bradley directly and proximately caused the violation of Bailey's rights under the Eighth Amendment of the United States Constitution by failing to train, supervise, and discipline FCI Aliceville staff and employees and/or report known or suspected sexual misconduct thereby failing to adequately prevent further constitutional violations.

48.     Warden directly and proximately caused the violation of Bailey's rights under the Eighth Amendment of the United States Constitution by consistently failing to establish and enforce procedures for investigations of disciplinary infractions or report the same so as to limit opportunities for staff to be alone with inmates unsupervised, providing the conditions of opportunity for them to have sexual contact with, or to sexually assault or rape persons in the custody of the BOP at Aliceville.

**COUNTS III-VII**

**Federal Tort Claims Act: Count III) Assault; Count IV) Battery; Count V) Invasion of**

**Privacy; Count VI) Outrage; Count VII) Negligence**

**(United States of America)**

49.    Plaintiff realleges and incorporates paragraphs 1-48.

50. Defendant the United States of America is responsible for the oversight of its employees, which includes officers and staff at federal correctional institutions, including FCI Aliceville.

51. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Alabama.

52. Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

53. Defendant United States and the supervisors and employees of FCI Aliceville have a duty to provide inmates with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

54. As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known sexual abusers and rapists and/or individuals who pose a foreseeable risk of sexual abuse or rape.

55. Correctional officers and other prison officials have a duty to protect inmates from harm

caused by correctional officers and other prison officials.

56. Correctional officers and other prison officials have a duty to house inmates in a safe and secure manner.

57. Correctional officers and other prison officials have a duty to protect inmates from known and obvious dangers posed by correctional officers and other prison officials.

58. FCI Aliceville and its agents allowed the sexual assault and battery of Bailey to go on for over a year.  As such, Defendant USA is liable for the acts described herein.

59. As a direct result of the prison officials' breach of their non-discretionary duties or their reckless, willful, wanton and careless disregard of the obvious and known risk to inmates in improperly performing them, Bailey suffered personal injury and severe emotional distress from sexual abuse at the hands of Cooper.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court grant her the following relief:

1. Compensatory damages as to all Counts;

2. Punitive damages as to Counts I-II above;

3. Attorneys' fees and costs; and,

4. Such other further relief as this Court deems just.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON
ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

/s/ Sidney Jackson
Samuel Fisher
Sidney M. Jackson
*Attorneys for the Plaintiff*

11

**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sjackson@wigginschilds.com
sfisher@wigginschilds.com

**Notice of Lawsuit and Request for Waiver of Service to Be Sent  by Certified Mail to the Following:**

Federal Bureau of Prisons
Department of Justice
FCI Aliceville
Officer Cooper
Warden Bradley